**SO ORDERED.**

**SIGNED this 24 day of July, 2008.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE

_____

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NICHOLAS JEROME DeTHAMPLE, | ) | Case No. 07-11829 |
| ANGELA RENEE DeTHAMPLE, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |

## MEMORANDUM OPINION

      This Court considers an issue requiring interpretation of certain provisions of the Bankruptcy Code enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA): Is a 401(k) disbursement received by an above-median income debtor during the 6-month period before filing included in the calculation of "current monthly income" under 11 U.S.C. § 101(10A) and the amount of "projected disposable income" that must be paid under the chapter 13 plan? The chapter 13 trustee objected to confirmation of debtors' amended chapter 13 plan on

the grounds of feasibility and failure to include the 401(k) disbursement in projected disposable income as required by 11 U.S.C. § 1325(b)(1)(B).[1] The parties submitted the case on joint stipulations of fact and briefs.[2] The trustee appeared by her attorney Christopher T. Micale. The debtors appeared by their attorney William H. Zimmerman.

**Jurisdiction**

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(L).

**Findings of Fact**

Pursuant to the parties' stipulations of fact,[3] the Court finds the following facts controlling for determining the trustee's objection to confirmation.

Debtors filed their chapter 13 petition on July 31, 2007, together with their completed Form B22C.[4] Debtors filed their amended chapter 13 plan on January 10, 2008.[5] As of February 6, 2008 unsecured claims filed in debtors' case total $20,183.06.[6] It is stipulated that debtors are above-median income debtors without regard to whether the 401(k) disbursement is included in current

---

[1] Dkt. 41. Unless otherwise noted, all statutory references are to Title 11 U.S.C. § 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] Dkt. 51. The trustee filed a brief.

[3] Dkt. 45.

[4] Form B22C is the official bankruptcy form required to be completed by chapter 13 debtors containing their statement of current monthly income and disposable income calculation.

[5] Dkt. 38. Debtors propose a reduction in monthly plan payments from $1,000 to $400.

[6] If the trustee is successful in her objection to claim number 4, the unsecured claims may increase slightly to $20,279.06.

Case 07-11829    Doc# 68    Filed 07/24/08    Page 2 of 18

monthly income.[7] Line 6 of Form B22C is for pension and retirement income. Debtors showed no income on line 6.

The six-month period for calculating "current monthly income" under § 101(10A) is January 1, 2007 through June 30, 2007. In April of 2007, Mrs. DeThample received a $4,000 disbursement from her 401(k) plan; this disbursement was within the six-month period defined by § 101(10A). The parties further stipulate that the "nature of the debtor-wife's disbursement from her 401(k) is such that it was a singular event and is not anticipated to occur again during the life of the debtors' Chapter 13 Plan."[8]

The statement of current monthly income, as completed by debtors, shows current monthly income of $4,875.27 and is comprised of Mr. DeThample's wages (Form B22C, line 2) and Mrs. DeThample's unemployment compensation (Form B22C, line 8). The total of all deductions and adjustments from current monthly income claimed by debtors on Form B22C is $4,994.52 (line 57) resulting in monthly disposable income of zero (line 58). If the 401(k) disbursement were included in Form B22C, debtors' current monthly income would increase to $5,541.94 and debtors' monthly disposable income would be $547.42. In this instance, unsecured creditors would receive $32,845.20 over the applicable commitment period ($547.42 x 60 months).

After their initial filing debtors filed amended Schedules I and J on January 10, 2008.[9] Amended Schedule I shows that Mrs. DeThample is now employed and that debtors' gross income

---

[7] *See* Dkt. 45, ¶ 11. Because debtors are above-median income debtors, debtors must commit their projected disposable income for an "applicable commitment period" of 60 months. § 1325(b)(4)(A). No issue is presented in the matter before the Court concerning the length of the applicable commitment period.

[8] Dkt. 45, ¶ 15.

[9] Dkt. 40.

is $4,177.12.[10]   After payroll deductions and monthly expenses, amended Schedule J shows that debtors are left with monthly disposable income of $344.40.[11]

**Analysis**

The starting point for the Court's analysis necessarily begins with current monthly income as defined by § 101(10A) because the definition of "disposable income" under § 1325(b)(2) incorporates the current monthly income concept.[12]  Once current monthly income and disposable income are established, the Court must consider whether debtors are committing all of their "projected disposable income" (a term undefined by the Code) to make payments to unsecured creditors under the plan as required for confirmation under § 1325(b)(1)(B).  Thus, the Court turns to the first part of this analysis – current monthly income.

    **A.    Is a 401(k) Distribution Received by Debtors Included in Current Monthly Income?**

Under § 101(10A), current monthly income (CMI) is defined as "average monthly income that the debtor *receives from all sources* . . . without regard to whether such income is taxable income . . . ."  At first blush, a 401(k) plan distribution or withdrawal would seem to be a "source"

---

[10] Amended Schedule I shows that Mrs. DeThample's monthly gross earnings ($560) are less than the average monthly unemployment compensation ($643) she previously reported in the Statement of Current Monthly Income on Form B22C, line 8, and substantially less than the $1,544 of monthly unemployment she was actually receiving at the time of filing.

[11] Debtors' original Schedules I and J, showed gross income of $5,161,12 and monthly disposable income of $1,438.40.  Of this gross income, debtors reported on Schedule I that Mrs. DeThample was receiving monthly unemployment income of $1,544 at the time of filing bankruptcy.

[12] Section 1325(b)(2) states that "[f]or purposes of this subsection [§ 1325(b)], the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended – (A)(I) for the maintenance or support of the debtor or a dependent of the debtor . . . ."

-4-

within the plain meaning of these few words. However, bankruptcy courts disagree on whether 401(k) withdrawals within the six months preceding a debtor's filing are part of CMI.[13]

In *Simon v. Zittel*, one bankruptcy judge has held that 401(k) draws should be excluded from CMI, noting that the content of a 401(k) account is income that the employee received at the time it was deposited:

> Simply put, once placed in a retirement account, the funds are unavailable to the wage earner only in the sense that there may be hoops to jump through to access them. For example, while funds deposited in a checking account can be accessed by simply writing a check, payment of deferred taxes and, in some situations, a penalty, may be required to access funds in a 401(k) or other retirement account. The presence of penalties and taxes, however, does not make the funds any more unavailable than funds in a checking account. Clearly, wages, once received by the debtor, are "received for use" and within the "care, custody and control" of the debtor until they are spent, no matter how they are allocated.[14]

The *Simon* court also notes that, while the taxation of funds deposited in a 401(k) account as income is deferred until they are withdrawn, those funds are subjected to other forms of taxation including Medicare, social security and federal unemployment tax at the time they are earned.[15] Thus, while the taxation of these funds is irrelevant to whether they are a part of CMI, 401(k) funds are "received" by the debtor at the time he earns his wage, not when he withdraws them. Accordingly, the *Simon* court concludes that 401(k) draws within the six months preceding filing

---

[13] The Court's research uncovered three bankruptcy court decisions that have addressed the issue of whether early disbursements or withdrawals from a 401(k) (not a loan) are included in CMI. In two of the three cases, the bankruptcy courts concluded that 401(k) withdrawals taken in the 6-month period before filing are not part of CMI: *Simon v. Zittel*, 2008 WL. 750346 (Bankr. S. D. Ill. Mar. 19, 2008) and *In re Wayman,* 351 B.R. 808 (Bankr. E. D. Tex. 2006). In the remaining case, *In re Sanchez*, 2006 WL 2038616 (Bankr. W. D. Mo. Jul. 13, 2006), the bankruptcy court concluded that 401(k) disbursements received by the debtor during the 6-month period before filing are included in the definition of CMI.

[14] 2008 WL 750346 at * 3 (Bankr. S.D. Ill. Mar. 19, 2008).

[15] *Id.*

are not included in CMI.

Another case that so holds is *In re Wayman*.[16] There, the debtor received part of her ex-husband's IRA account as part of her divorce settlement and drew down part of it in the six-month run up to bankruptcy. Holding that the debtor "received" this income when the account was set over to her, and not when she took a distribution, the court stated that the income need not be reported on Form B22C, nor did it comprise CMI. This case is helpful for the proposition that IRA or 401(k) income is received when the debtor obtains custody and control of it, not when the funds are withdrawn. Given the Code's provision that the determination be made without regard to whether the funds are "taxable income," this conclusion is entirely logical. Of course, in *Wayman*, there is a clear record as to when the debtor "received" the IRA account. That evidence is not referenced in *Simon*, and one can only speculate as to when that debtor "received" the funds that were deferred to his 401(k).

On the inclusion side of the CMI argument is *In re Sanchez*, a case similar to that at bar, where the debtor took a distribution within the six months before filing.[17] There, the bankruptcy court concluded that because the income had been deferred by being placed in the IRA account, it was not "received" in the sense of having "come into the possession" by the debtor until it was disbursed from the IRA:

> The Court does not need to look further than the plain language of the statute to arrive at this conclusion. "Income" is "a gain or recurrent benefit usually measured in money that derives from capital or labor." "Received" means "to come into possession of" or "acquire." And, "derived" is largely redundant of "received," meaning "to take, receive, or obtain especially from a specified source." A

---

[16] 351 B.R. 808 (Bankr. S.D. Tex. 2006).

[17] 2006 WL 2038616 (Bankr. W. D. Mo. Jul. 13, 2006).

disbursement from a 401(k) plan fits all of these critical terms. It is a gain, inasmuch as a person cannot use the money deposited in a 401(k) plan until it is disbursed, and a person obviously cannot use the funds until he takes possession of them.[18]

The *Sanchez* court rejected out of hand the proposition that the funds were income received when they were deposited and drew support for its conclusion from the fact that 401(k) funds are taxed as income only when they are distributed.[19] The court also noted the lack of evidence that the funds drawn within the six months were the same funds deposited by the debtor during that time.[20]

In the present case, there is nothing in the stipulation upon which this Court could conclude that the funds drawn were funds earned within the six months preceding the filing. What is clear is that the debtor did not have possession or use of these funds until they were distributed and that occurred during the relevant six month period. This Court agrees with the *Sanchez* court that the receipt of the 401(k) disbursement constitutes a part of debtors' income and is included in CMI.[21] Like the *Sanchez* court, this Court notes that the common, dictionary definition of "income" includes a "a gain or recurrent benefit . . . that derives from capital or labor."[22] While the arguments found in *Simon* and *Wayman* are persuasive, this Court reads § 101(10A) to include every dime a debtor gets during the relevant period except for those amounts specifically excluded by § 101(10A)(B), like Social Security benefits. What these debtors received from the 401(k) was a derived gain.

---

[18] *Id.* at *2 [citations omitted].

[19] *Id.*

[20] *Id.* at *3.

[21] *See generally* James W. McNeilly, Jr., and David P. Leibowitz, *Withdrawals from Tax-deferred Retirement Accounts: Included in Current Monthly Income?*, XXVII Am. Bankr. Inst. J. 12, 58-59 (June 2008).

[22] http://www.merriam-webster.com/dictionary/income.

Congress could certainly have added other exclusions, but it did not. The Court also believes that this reading is consistent with the apparent purpose of the CMI calculation, that being to determine how much money debtors have available to pay their creditors.

> **B.  Is Debtors' Receipt of a 401(k) Distribution Included in Debtors' Projected Disposable Income for Purposes of § 1325(b)(1)(B)?**

Having concluded that debtors' 401(k) draw should have been included in their CMI, the Court must now turn to the equally vexing issue of how to calculate the debtors' "projected disposable income" in determining whether this plan complies with § 1325(b)(1)(B). Section 1325(b)(1)(B) provides that if the trustee or an unsecured creditor objects to debtor's plan, the court may not confirm it unless "the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." "Disposable income" is defined in § 1325(b)(2) as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . ." Thus, courts must wrangle with whether "projected disposable income" means "disposable income" as determined by Form B22C, line 58 over the applicable commitment period, a simple mathematical calculation known as the "mechanical rule,"[23] or whether CMI, as adjusted on Form B22C, is merely the starting point in "projecting" what the debtor might make and be able to pay over the commitment period. In this case, if the B22C figures are used exclusively, the debtor will be required to pay the unsecured creditors $32,845.20 over the life of the plan ($547.42 x 60 months) when their Schedules I and J

---

[23] *See e.g., In re Greer*, __ B.R. __, 2008 WL 2485521 (Bankr. C.D. Ill. 2008); *In re Manci*, 381 B.R. 537 (W.D. Wis. 2008); *In re Brady,* 361 B.R. 765 (Bankr. D. N.J. 2007); *In re Miller,* 361 B.R. 224 (Bankr. N.D. Ala. 2007); *In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007); *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006).

-8-

reflect only $344.40 a month in net disposable income, as that term was formerly understood.

The Code's use of adjusted CMI as the definition of "disposable income" not only seems contrary to determining what a debtor might earn and spend in the future because the CMI calculation is not only a retrospective view of income, but is also somewhat theoretical because the permissible deductions from CMI made on Form B22C are not all "actual" numbers. Instead, many of the permissible deductions are premised on Internal Revenue standards and do not reflect a debtor's actual reported expenses. In light of that, a majority of courts have adopted a hybrid approach to projecting disposable income that begins with the CMI figures on B22C, but, where it appears that the debtor's prospective income expectations do not match that, ends with an examination of the debtor's actual income and expenses to determine what projected disposable income is.[24] In other words, these courts go beyond the concept that "projected" disposable income implicates a mere multiplier of past income and expense as shown on Form B22C, line 58. The hybrid approach has been adopted by the Tenth Circuit Bankruptcy Appellate Panel (BAP) in *In re Lanning*.[25]

Because both camps ride under the banner of "plain meaning," this Court notes that Congress has defined the term "disposable income" in § 1325(b). It states that, for the purposes of subsection (b), disposable income is defined as "current monthly income received by the debtor . . . less

---

[24] *See e.g., In re Briscoe,* 374 B.R. 1 (Bankr. D. Colo. 2007); *In re Edmondson,* 363 B.R. 212 (Bankr. D. N.M. 2007); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); *In re Casey*, 356 B.R. 519 (Bankr. E. D. Wash. 2006); *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006); *In re Fuller*, 346 B.R. 472 (Bankr. S.D. Ill. 2006); *In re Louviere*, __ B.R. __, 2008 WL 925824 (Bankr. E.D. Tex. 2008); *In re Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007).

[25] 380 B.R. 17 (10th Cir. BAP 2007).

-9-

amounts reasonably necessary to be expended . . . ."[26]  The only other time the words "disposable income" appear together in subsection (b) are in § 1325(b)(1)(B), and then the words are preceded by "projected."  The target amount that the debtor must propose to pay is the projected disposable income "to be received" during the commitment period.[27]  In the balance of subsection (b), when referring to the debtor's income to determine whether the debtor lies above or below the income median, the drafters used not "disposable income," but the words "current monthly income" much as they did in § 707(b).  The word "projected" and the phrase "projected disposable income" are undefined.

Under the previous law, projected disposable income was well-defined in the case law as the difference between what the debtor projected she might make and what she might be expected to expend for her and her dependents' support and well-being.[28]  Former § 521(1) required a "schedule of current income and current expenditures."[29]  New § 521(a)(1)(B)(ii) requires the same.  Indeed, new § 521(i)(1) provides that any debtor who fails to file this schedule shall suffer automatic dismissal of the case on the 46th day after the filing of the petition.  Clearly, Congress laid great emphasis on debtors' continued accurate representation of not only their CMI and applicable expense deductions on Form B22C (a required filing under new § 521(a)(1)(B)(v)), but also of their

---

[26]  Section 1325(b)(2).

[27]  Section 1325(b)(1)(B).

[28]  *See* § 1325(b)(1)(B) (Thomson/West 2003) (requiring chapter 13 plan to provide "that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."); *In re Richardson*, 283 B.R. 783, 798 (Bankr. D. Kan. 2002); *In re Solomon*, 67 F.3d 1128 (4th Cir. 1995); *In re Frederickson*, 375 B.R. 829, 832-33 (8th Cir. BAP 2007) (discussing "projected disposable income" pre-BAPCPA); *In re Anderson*, 21 F. 3d 355 (9th Cir. 1994).

[29]  Schedule I and Schedule J.

actual monthly income and expense on Schedules I and J. If all income-driven decisions to be made in chapter 7 and 13 cases were to be made using only CMI and not actual current income and expense, there would be no purpose to requiring both schedules to be filed.

A definition of the word "project" is "to plan, figure, or estimate for the future."[30] The concept of CMI by definition looks to the immediate pre-petition past. Projecting disposable income forward, or estimating it for the future requires not only consideration of the debtor's past performance, but also of his current income and expenditures. If they are similar, projected CMI, adjusted by reasonably necessary expenses, and multiplied by the number of months in the applicable commitment period, may well be the appropriate measurement of what the debtor is obliged to pay. If, however, the record suggests that the CMI calculation may not approximate the debtors' present and future income abilities, courts cannot simply ignore those conditions. That is the import of the word "projected" in the statute.

This Court agrees with the analysis of this question found in my colleague Judge Karlin's opinion in *In re Lanning,* as affirmed by the Tenth Circuit Bankruptcy Appellate Panel.[31] Judge Karlin notes that the reference to projected income to be received would be superfluous were courts bound only to the historical average income set forth in § 101(10A) and Form B22C.[32] She also concludes that "we cannot minimize Congress' insertion of the word "projected" before the words "disposable income" in the Chapter 13 confirmation context."[33] She points out that courts are

---

[30] http://www.merriam-webster.com/dictionary/projected.

[31] No. 06-41037, 2007 WL 1451999 (Bankr. D. Kan. May 15, 2007), *aff'd in part* 380 B.R. 17 (10th Cir. BAP 2007), *appeal docketed* No. 08-3009 (10th Cir.).

[32] 2007 WL 1451999 at *5.

[33] *Id.*

directed to determine whether the debtor is committing her projected disposable income "as of the effective date of the plan," again implicating an attempt to determine what the debtor's future will bring, predicated on her present financial abilities.[34] Finally, she notes that, as in the present case, use of the CMI multiplier without consideration of a debtor's present abilities would prevent many debtors' plans from ever being confirmed, even though they had the capacity to pay their creditors something.[35] This Court agrees with Judge Karlin's reasoning, and respectfully disagrees with those courts that would apply the rote mechanical test.

In the Tenth Circuit BAP opinion affirming Judge Karlin's *Lanning* decision,[36] the BAP panel opted for the "projected view" and cited for support the First Circuit BAP's opinion in *In re Kibbe*.[37]  *Kibbe*, in turn, adopts the reasoning of the two leading bankruptcy court opinions supporting the forward-looking view: *In re Jass*[38] and *In re Hardacre*.[39] *Kibbe* involved a below-median debtor who proposed a plan that paid no unsecured dividends because her B22C disposable income was a negative number, even though she had obtained a higher paying job immediately before filing and her actual income exceeded her expenses by more than $2,400. The First Circuit BAP stated:

> [W]here, as here, the "current monthly income" amount is not true to the debtor's *actual* current income, courts should assume that Congress intended that they rely

---

[34] *Id.*

[35] *Id.*

[36] 380 B.R. 17 (10th Cir. BAP 2007).

[37] 361 B.R. 302 (1st Cir. BAP 2007).

[38] 340 B.R. 411 (Bankr. D. Utah 2006).

[39] 338 B.R. 718 (Bankr. N.D. Tex. 2006).

on what a debtor can realistically pay to creditors through his or her plan and not on any artificial measure. Attaching the word "projected" to a historical calculation assumes, without justification, that a debtor's circumstances will not change after the date of case commencement or during the plan commitment period. Life informs otherwise. Insofar as the term "disposable income" demands a look back and the term "projected" requires a look forward, the language is irreconcilable. One must give way to the other, or the courts must fashion an interpretation that gives the greatest meaning to both.[40]

Where the debtor's actual or reasonably anticipated income at confirmation is not "substantially the same" as the Form B22C disposable income figure, the First Circuit BAP held that the bankruptcy court must consider that fact in projecting disposable income.

Thus, the *Lanning* panel agreed "with the courts that have found "disposable income" to be only the starting point in determining "projected disposable income" under section 1325(b)(1)(B). Where it is shown that Form B22C disposable income fails accurately to predict a debtor's actual ability to fund a plan, that figure may be subject to modification."[41]

Subsequent to *Lanning*, the Ninth Circuit Court of Appeals has adopted the narrow interpretation that applies a multiplier. In *In re Kagenveama*,[42] that court holds that "projected disposable income" as referenced in § 1325(b)(1)(B) is "disposable income" as defined in § 1325(b)(2), projected over the applicable commitment period. This, the Ninth Circuit concludes, is the "most natural reading."[43] *Kagenveama* specifically rejects *Hardacre,* stating that "projected" modifies "disposable income," and that "disposable income" and "projected disposable income" are

---

[40] 361 B.R. at 312.

[41] 380 B.R. at 24-25.

[42] __ F.3d __, 2008 WL 2485570 (9th Cir. June 23, 2008).

[43] *Id.* at *2.

-13-

directly linked concepts.[44] Responding to *Jass*, the court says that nowhere in § 1325 is there language that would implicate or create the establishment of a "presumption" concerning disposable income. The court noted that the existence of the § 707(b) presumption of abuse demonstrates that Congress knows how to create a presumption and did not do so in connection with disposable income.[45]

The factual setting of *Kagenveama* may have some bearing on the weight to be given its holdings. The debtor's Form B22C expenses were greater than her CMI, yielding a negative disposable income figure. Nevertheless, this above-median debtor proposed a plan with a thirty-six month duration, paying $1,000 per month to the unsecured creditors. The chapter 13 trustee objected, asserting that the applicable commitment period was properly 60 months, not 36. The bankruptcy court overruled the trustee's objection, stating that debtor was not required to propose a 60-month plan because she had no projected disposable income. This lower court ruling the Ninth Circuit affirmed, suggesting that *Kagenveama* may be about applicable commitment periods as much as it is about projected disposable income. In the Ninth Circuit, a debtor with no projected disposable income has no applicable commitment period.

Moreover, the Ninth Circuit's *Kagenveama* opinion only looks within the confines of § 1325(b) for its analysis and nowhere acknowledges the inherent contradiction between "projecting" disposable income "to be received in the applicable commitment period" and using the backward-looking "current monthly income" figure as a starting point. It also ignores the prefatory language in § 1325(b)(1) that requires these calculations be made "as of the effective date of the plan" as

---

[44] *Id.* at *3.

[45] *Id.* at *4.

-14-

opposed to determining what was received during the six-month period before the case was filed, as the definitions of CMI and disposable income contemplate. *Lanning* recognizes these contradictions and attempts to resolve them in a manner that not only gives all of these terms meaning, but also results in above-median debtors being required to pay what they actually can pay or being allowed to not pay what they cannot. This is entirely consistent with the policy and legislative history of BAPCPA as well as the policy of the 1978 Act. Although this Court agrees with Judge Karlin's and the Tenth Circuit BAP's analysis and interpretation of "projected disposable income" as used in § 1325(b)(1)(B), it notes that *Lanning* is presently on appeal to the Tenth Circuit Court of Appeals.[46]

In the present case, debtors' actual disposable income deduced from amended Schedule I and J, without regard to any intended further withdrawals from their 401(k), is about $344.[47] Over sixty months, the debtors could pay approximately $20,640 on account of unsecured claims. Unsecured claims in this case total at most $20,279. Moreover, the debtors' draw of $4,000 on their 401(k) does not appear to be part of an ongoing pattern of payments.[48] Indeed, according to debtors' amended Schedule C, only $400 remains in the 401(k) account. This affords sufficient factual predicate to find that a change of circumstances justifies excluding the pre-petition $4,000 401(k) distribution from debtors' CMI, at least for § 1325(b)(1)(B) purposes.[49] While this Court declines

---

[46] No. 08-3009 (10th Cir.). The parties have filed their appellate briefs and the appeal awaits the Tenth Circuit's decision.

[47] Dkt. 40.

[48] The parties described the $4,000 withdrawal in the joint stipulations as a "singular event" and "not anticipated to occur again" during the life of the plan. Dkt. 45, ¶ 15.

[49] The substantial change in debtors' circumstances here is the fact that the pre-petition 401(k) distribution was a "singular event," that Mrs. DeThample subsequently obtained

-15-

to categorically declare that pre-petition 401(k) disbursements may in all cases be excluded from the projected disposable income calculation, where the draw does not appear to have been taken on a planned or periodic basis, it will likely be disregarded in the projected disposable income calculus.[50] This reading is consistent with a reading of other portions of the Code, including the clearly espoused policy of § 522(b)(4) which fully exempts any qualified retirement fund from the bankruptcy estate, § 522(b)(3)(C) that exempts a 401(k) fund for debtors claiming state law exemptions, § 522(d)(12) that exempts any 401(k) fund for debtors claiming federal exemptions, and § 522(n) which allows other Internal Revenue Code 408 funds to be exempted up to $1.0 million. Congress clearly intended that debtors' retirement assets be protected even in the event of debtors' bankruptcy.[51]

If a strict interpretation of § 1325(b)(3)(B) is applied, it appears that debtors expenses on amended Schedule J are within the amounts deemed reasonably necessary in that subsection.

---

employment and that her earnings from that employment as reported on amended Schedule I are substantially less than she was receiving pre-petition from unemployment compensation. In *Lanning,* the Tenth Circuit BAP stated that it is appropriate to utilize the "special circumstances" standard in § 707(b)(2)(B)(i) "in considering a Chapter 13 debtor's claim that a substantial change of circumstances justifies a similar deviation from Form B22C." 380 B.R. at 25. The Court concludes that debtors have satisfied that "special circumstances" standard in this case, given the parties' stipulations.

[50] If, for instance, the debtor had reached the age of 62 and had begun to draw on her 401(k) regularly as a means of support, the Court might, after reviewing and comparing Form B22C and Schedules I and J, consider that those disbursements should included in the projected disposable income calculation.

[51] The Court notes that these debtors exempted this 401(k) fund under KAN. STAT. ANN. § 20-2618 (2007), the exemption of benefits under the retirement system for judges. Because the 401(k) is identified on Schedule C as a Cessna plan, the Court does not believe debtors cited the correct statutory authority for exempting the 401(k). *See* KAN. STAT. ANN. § 60-2308 and § 60-2313(a)(1) (2005). The trustee has not, however, objected to debtors' claim of exemption in the 401(k).

Because these debtors are above-median, their reasonably necessary expenses are determined in accordance with § 707(b)(2)(A) and (B) on Form B22C. In other words, while they may be entitled to apply a real-time income figure in determining the "disposable income," they are constrained by allowable amounts of B22C expenses.[52] A comparison of their Schedule J expenses to those noted on Form B22C shows that none of the expenses they claim on Schedule J exceeds the amounts determined in accordance with § 707(b)(2)(A) and (B).[53]

Applying these conclusions to the DeThamples, a projected disposable income calculation similar to the debtor in *Lanning* obtains.[54] These debtors' amended Schedule I shows net monthly income of $2,893.40[55] and debtors' Form B22C shows expenses calculated under § 707(b)(2) as $4,994.52 resulting in a negative number. By electing to pay $400 per month under their amended chapter 13 plan,[56] more than the statutory means test requires, the debtors' plan is confirmable so long as it runs 60 months.

---

[52] *See In re Gonzalez*, __ B.R. __, 2008 WL 2492162, *15-16 (Bankr. S.D. Tex. 2008). *See also, In re Lanning*, 2007 WL 1451999 at *7; *In re Jass*, 340 B.R. at 418.

[53] The total deductions allowed under § 707(b)(2) as shown on debtors' Form B22C, line 52 is $4,793.93, while the monthly expenses claimed on amended Schedule J by debtors is $2,549.

[54] "Because Debtor Lanning's Schedule I showed actual income of $1,922, and her B22C showed expenses of $4,228, the means test would result in Debtor not having to pay anything to unsecured creditors, because the remainder is a negative number. If she pays zero, however, she cannot formulate a feasible plan that meets all the other requirements of § 1325(a). Nothing prevents debtors from electing to pay more than the statutory means test requires, in order to meet the requirement that a plan must be feasible, so long as the payment continues for 60 months. Accordingly, since Debtor Lanning has proposed to pay $144 per month, her plan is confirmable so long as it continues 60 months." 2007 WL 1451999 at *8.

[55] Dkt. 40.

[56] Dkt 38.

Therefore, the Court concludes that while the pre-petition distribution from the debtor's 401(k) is included in CMI for completing Form B22C, it may be disregarded in determining debtors' projected disposable income for confirmation purposes under § 1325(b)(1)(B) and the factual circumstances of this case. The Trustee's objection is therefore OVERRULED. The Trustee is directed to prepare and circulate an order on confirmation consistent with the forgoing.

# # #